IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| LEROY BRANCH, | ) | C/A No. 4:07-2618-HMH-TER |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| WILLIE EAGLETON, | ) | |
| ROBIN CHAVIS, JOHN | ) | |
| JONES, ANNIE SELLERS, | ) | |
| JAMES GRAHAM, RONALD | ) | |
| JACKSON, IVAN RIVERS, | ) | |
| JOHN DOE, AND SCDC, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

The plaintiff, Leroy Branch, filed this action on June 7, 2007, alleging various claims for violations of his constitutional rights pursuant to 42 U.S.C. § 1983.[1] The plaintiff is an inmate currently housed at the Lieber Correctional Institution ("LCI"). Before the undersigned is the defendants' motion for summary judgment (document # 21) and the plaintiff's motion for a temporary restraining order (document # 26.)[2]

**I. PROCEDURAL BACKGROUND**

On January 24, 2008, the defendants filed a motion for summary judgment, along with

---

[1]This date reflects that the date the plaintiff signed the proof of service. (Compl. Ex. 1.) The undersigned notes that this case was removed from state court and the date stamp for the Richland County Clerk of Court is illegible. (*See* Compl.)

[2]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

supporting memorandum, affidavits, and exhibits. (Document # 21.) The undersigned issued an order filed January 25, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.1975), advising the plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. On February 26, 2008, the plaintiff filed a response opposing the defendants' motion for summary judgment along with supporting memorandum and affidavits. (Document # 25.)

## II. DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

As noted above, the plaintiff is currently an inmate at LCI. The plaintiff alleges claims regarding incidents which occurred when he was incarcerated at the Evans Correctional Institution ("ECI"). The plaintiff alleges the defendants violated his Eighth, and Fourteenth Amendment rights through the use of excessive force and the deliberate indifference to his medical needs. (Am. Compl.) He also alleges claims for gross negligence and assault and battery.

On August 18, 2004, the plaintiff was being escorted to cell # 228 from the Special Management Unit ("SMU") by defendants Lt. John Jones, Lt. James Graham, Sgt. Jackson, and Cpl. Jackson (Am. Compl. at ¶ 15.) After placing the plaintiff into the cell, the plaintiff alleges the defendants directed him to exit the cell so that they could handle an inmate in the same cell who refused to get into his bed. (*Id*. at ¶ 17.) The plaintiff alleges he walked out of the cell as directed, and Lt. Jones punched him for no apparent reason. He alleges Sgt. Jackson and Sgt. Rivers then grabbed him and wrestled him to the ground. (*Id*. at ¶ 20.) The plaintiff alleges Sgt. Rivers "like a mad man jumped on [his] back in a fit of uncontrolled rage, [and] plunged his steel handcuffs

underneath the plaintiff's jawbone, and forcibly pulled the plaintiff's head back, and twisted [his] left arm behind [his] back, so he could handcuff [him]." (*Id*. at ¶ 21.) He alleges he cried out in extreme pain and told Sgt. Rivers he could not move his right arm back because Sgt. Rivers had his knee in the plaintiff's back. Additionally, he alleges his "legs were forcibly held in an awkward stress position." (Am. Compl. at ¶ 22.) The plaintiff alleges he was bleeding from above his right eye and mouth (*id.* at ¶ 23) and was severely injured (*id*. at ¶ 33), but that he did not receive any medical treatment. (*Id*.; ¶ 49.) Instead, he alleges he was taken back to SMU. (Am. Compl ¶ 35.)

The defendants set forth a different set of facts. They state that when the plaintiff was placed into cell # 228 and after his handcuffs were removed, despite directives not to move and/or leave the cell, the plaintiff charged at defendant Lt. Jones and/or attempted to exit his cell. (Defs.' Mem. Supp. Summ. J. Mot. Ex.2 - Graham Aff. ¶ 3-4; Rivers Aff. ¶ 4-6). They contend the plaintiff attempted to leave his cell because of his "visions" (Defs'. Mem. Supp. Summ. J. Mot. at 3.) At which point, the plaintiff was taken down to the floor and restrained by defendants Lt. Jones, Lt. Graham, Sgt. Jackson, and Cpl. Jackson. (Defs.' Mem. Supp. Summ. J. Mot. Ex. 2- Graham Aff. ¶ 5; Rivers Aff. ¶ 7). Thereafter, the plaintiff was transported back to the SMU and given medical treatment for minor cuts and bruises. (*Id.* Graham Aff. ¶ 7; Rivers Aff. ¶ 9).

On August 25, 2004, based on the incidents which occurred on August 18th, the plaintiff was charged with threatening to inflict harm. (Am. Coml. ¶ 37.) He was convicted and sentenced to 180 days of administrative segregation, the loss of phone, canteen, and visitation privileges for 180 days, and the loss of twenty-six days of good time credit. (*Id.* at 43.) The plaintiff alleges he filed a grievance regarding his disciplinary hearing, and defendant Chavis responded. (Am. Compl. at ¶

3

45.) He alleges his due process rights were violated at his disciplinary hearing because he was not able to present witnesses. (*Id*. at ¶ 58.)

The plaintiff is seeking actual damages, an injunction against SCDC requiring it to vacate his disciplinary conviction, and other relief the court deems just and proper. (*Id*. at 12.)

### B. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir.1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed.R.Civ.P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed.R.Civ.P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case,

on which that party will bear the burden of proof at trial. Fed.R.Civ.P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In Celotex, the Court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C. DISCUSSION

### 1. Exhaustion

The defendants contend that the plaintiff has failed to exhaust his administrative remedies. The undersigned agrees.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a §1983 action concerning his confinement. 42 U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In Porter v. Nussle, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. Recently in Woodford v. Ngo, ___ U.S. ___ , 126 S. Ct. 2378, 2386, 165 L.Ed.2d 268 (2006), the United States Supreme Court held that the PLRA exhaustion requirement requires proper exhaustion. The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that the agency holds out, and doing so properly." *Id*. (Internal quotations and citations omitted). Failure to exhaust all levels of

administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. *Id*.

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Woodford, 126 S.Ct. at 2385 (*quoting* McCarthy v. Madigan, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id*. Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

In order to exhaust the SCDC administrative remedies, an inmate must fill out a Form 10-5 or Step 1 grievance about the matters raised in his complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen (15) days of the alleged incident of which the inmate complains. The Warden must respond to the Step 1 grievance in writing no later than forty (40) days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Form 10-5a or Step 2 Request for Responsible Official Review with the Inmate Grievance Coordinator within five (5) days of the receipt of the response from the Warden. A responsible official has sixty (60) days to respond to the Step 2 grievance. The decision of the official who answers Step 2 is considered the SCDC's final response in the matter. Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under §1983. 42 U.S.C. § 1997e.

The plaintiff alleges that he filed a grievance regarding his disciplinary action. (Am. Compl. at ¶ 45.) However, the plaintiff does not specifically allege he filed a Step Two grievance regarding

his disciplinary action. Furthermore, there is no evidence in the record that the plaintiff filed any grievances regarding his claims for excessive force or medical indifference. The plaintiff contends that the defendants have not presented any affidavits regarding whether he filed grievances on these claims.

The Fourth Circuit has held that it is the Defendants who have the burden of showing that a Plaintiff failed to exhaust his or her administrative remedies. Anderson v. XYZ Correctional Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005)(holding inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by defendant). Here, the defendants have both pled this affirmative defense and submitted evidence to show that the plaintiff failed to exhaust his administrative remedies on his claims prior to bringing this lawsuit. The defendant has submitted a copy of a summary of the plaintiff's grievance record. (Defs. Mem. Supp. Summ. J. Mot. Ex. 3.) Although it is not clear, it appears that the plaintiff filed a Step Two grievance on his claim relating to his disciplinary proceeding. (*Id*. at 4.) Furthermore, the undersigned unfortunately cannot tell what issues the plaintiff actually alleged in that grievance as the summary merely refers to the subject matter and not the grounds raised (i.e , the undersigned cannot discern whether he actually raised a violation of his due process right based on the defendants' alleged refusal to allow him to present witnesses). However, reviewing the rest of the plaintiff's grievance record, it does not appear that the plaintiff filed any grievances relating to his remaining claims. Further, the plaintiff also does not allege he filed any such grievances. Therefore, the plaintiff's claims, except for his claim relating to his disciplinary hearing, should be dismissed for failure to exhaust his administrative remedies. Alternatively, the undersigned recommends dismissal of all of the plaintiff's claims as discussed below.

7

**2. Eleventh Amendment Immunity**

The defendants contends that the plaintiff's §1983 claims against them for monetary damages are barred pursuant to Eleventh Amendment Immunity. The defendant SCDC contends it should be dismissed as the South Carolina Department of Corrections ("SCDC") is not a "person" under § 1983 and therefore not subject to suit.

In <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58 (1989), the Supreme Court held:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

<u>Id.</u> at 66. The Court found that the Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes" and that state agencies, divisions, departments and officials are "arms of the state." <u>Id</u>. at 70. Therefore, neither a state nor its officials acting in their official capacities are "persons" amenable to suit within the meaning of § 1983. <u>Will</u>, 491 U.S. at 71. However, the Eleventh Amendment does not apply to bar individual capacity actions seeking to impose personal liability on state officials, and therefore state officials sued in their individual capacity are "persons" within the meaning of § 1983. <u>Hafer v. Melo</u>, 502 U.S. 21, 31 (1991). One of the defendants, the SCDC, a state agency, is an arm of the state of South Carolina and thus entitled to Eleventh Amendment immunity from suit. <u>Seminole Tribe v. Florida</u>, 517 U.S. 44, 74-76 (1996). However, as to the remaining defendants, the plaintiff specifically states that he is suing them in their

individual capacities. (Compl. at 1 ¶¶ 4-7, 2.) Therefore, the remaining defendants are not entitled to Eleventh Amendment immunity.

Additionally, the plaintiff's claims do not fall under the narrow exception of Ex Parte Young, 209 U.S. 123 (1908). *See* Booth v. Maryland, 112 F.3d 139, 142 (4th Cir.1997). Ex Parte Young provides a limited exception to Eleventh Amendment immunity when a plaintiff seeks prospective relief against a state official for future constitutional violations. Ex Parte Young, 209 U.S. at 28.. *See* Republic of Paraguay v. Allen, 134 F.3d 622, 627 (4th Cir.1998). Because there is no possibility of a continuing violation actionable in federal court for the incidents alleged in the plaintiff's complaint which occurred in 2004, the Ex Parte Young exception does not apply. Accordingly, the defendant SCDC is entitled to Eleventh Amendment immunity from suit and should be dismissed as a defendant.

### 3.  Merits[3]

**a.  Excessive Force Claim**

As noted above, the plaintiff alleges that his constitutional rights were violated as a result of the use of excessive force by the defendants. Specifically, the plaintiff alleges in his amended complaint that Lt. Jones punched him twice in the face for no apparent reason and Sgts. Jackson and Rivers grabbed him and wrestled him to the ground. He alleges Sgt. Rivers "like a mad man jumped on [his] back in a fit of uncontrolled rage, plunged his steel handcuffs underneath the Plaintiff's

---

[3]The defendants state that to the extent the plaintiff alleges a claim regarding his classification, general conditions of confinement, or based on respondeat superior liability, these claims should be dismissed. (Defs'. Mem. Supp. Summ. J. Mot. at 7-8.) However, in his memorandum opposing summary judgment, the plaintiff specifically states he is not alleging any claim regarding his classification or general conditions of confinement nor is he basing any claims on vicarious or respondeat liability. (Pl.'s Mem. Opp. Summ. J. Mot. at 5, 13, 15.) Thus, the undersigned will not address these arguments.

9

jawbone, and forcibly pulled the Plaintiff's head back, and twisted my left arm behind my back, so he could handcuff me." (Am. Compl. at 4.)

In their affidavits, Lt. Graham and Sgt. Rivers state that the plaintiff was not punched in the face for no apparent reason by Lt. Jones, nor did Sgt. Rivers jump on the plaintiff's back in a fit of uncontrolled rage and/or plunge his steel handcuffs underneath the plaintiff's jawbone as alleged by Inmate Branch. (Defs.' Mem. Opp. Summ. J. Mot. Ex 2. - Graham Aff. ¶ 13; Rivers Aff. ¶ 13.) Instead, they aver that the plaintiff's placement onto the floor, his restraint, and his handcuffing were in response to the plaintiff's own sudden hostile actions. (*Id.* Graham Aff. ¶ 10; Rivers Aff. ¶ 10.) They further aver that the amount of force used on the plaintiff was not excessive and was justified under the circumstances. (*Id*. Graham Aff. ¶ 12; Rivers Aff. ¶ 12.)

According to the plaintiff's medical records:

> [The plaintiff] reported that he was being placed back in the Waxhaw unit after telling security that he did not want to return to the unit because he had several visions that had "come true." [The plaintiff] reported that several incidents seemed like de ja vois when they were manifested in the unit (Officer assaulted and inmate being stabbed). [The plaintiff] reported that he feared his recent "vision" would materialize so he purposely engaged in disciplinary actions that would result in . . . placement out of the unit . . . He was exiting his room after the officer removed the handcuffs (Note that I/M reported that he told all the officers escorting him that he planned to come out of his room and not return no matter what they would do to him). [Plaintiff] said as he crossed the threshold, he was hit . . .

(Defs.' Mem. Supp. Summ. J. Mot. Ex. 5- Pl.'s Med. Records at 43.)

It is well established that the use of excessive force upon an inmate violates the Eighth Amendment's prohibition against cruel and unusual punishment. Hudson v. McMillian, 503 U.S. 1, 5 (1992). To establish an Eighth Amendment claim for cruel and unusual punishment, the plaintiff must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2)

subjectively, the prison officials acted with a "sufficiently culpable state of mind." Wilson, 501 U.S. at 298. The subjective component requires the inmate to show that the officers applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." Hudson, 503 U.S. at 6-7. The objective component requires the inmate to prove that the use of force was more than de minimis or, in the alternative, that it was repugnant to the conscience of mankind. *Id*. at 9-10. De minimis injury can be conclusive evidence that the force used was also de minimis and, therefore, not violative of constitutional protections. *See* Norman v. Taylor, 25 F.3d 1259, 1264 (4th Cir. 1994).

Appropriate force may be used by prison officials when it is intended to maintain the discipline within a prison institution or to restore order. *See* Hudson, 503 U.S. at 6; Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The subjective component of an excessive force claim requires an inmate to demonstrate that the force used by an institutional official "inflicted unnecessary and wanton pain and suffering." Hudson, 503 U.S. at 7. In evaluating such a claim, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id*. (Internal quotations omitted). In determining whether a prison official acted maliciously and sadistically the court should consider: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Williams, 77 F.3d at 762.

Even assuming the plaintiff's allegations are true, the plaintiff has failed to establish a sufficient injury. As explained by the Fourth Circuit Court of Appeals in Norman v. Taylor, 25 F.3d

at 1263, "absent the most extraordinary circumstances, a Plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Because de minimis injury may serve as evidence that de minimis force was used, an excessive force claim should not lie where a prisoner's injury is de minimis. *Id*. at 1262-63. "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973). *See also* Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996) (holding prison officials are entitled to use appropriate force to quell prison disturbances, and acting under pressure without the luxury of a second chance, an inmate must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm).

Here, the plaintiff has alleged injuries which were de minimis.  The plaintiff alleges the incident "caused [him] much pain and suffering and could cause pain and suffering in the future." (Am. Compl. ¶ 46.)  Specifically, the plaintiff contends he suffered back pain, swelling, and bruising and he was bleeding from a 1/8 inch cut above his eyebrow and a ½ inch cut near his mouth. (Pl.'s Mem. Opp. Summ. J. Mot. at 10; 12.)  He then states that "nobody knew if the plaintiff had suffered broken bones, or if any infection entered his body . . . " (*Id*.)  He contends he has shown more than a de minimis injury "because an infection could have happened . . ." (*Id*.)

However, the plaintiff's medical records establish that any injury sustained by the plaintiff was nothing more that de minimis. (Defs.' Mem. Supp. Summ. J. Mot. Exs. 4-7 - Pl.'s Med. Records.)  On August 19, 2004, the plaintiff was seen by medical personnel after the incident.  The nurse noted that although the plaintiff stated "he had a whole in his cheek," she did not see a hole. (*Id*. at. 44.)  She noted some dried blood on the plaintiff's forehead and lip, and some discoloration and bruising of the plaintiff's lip. (*Id*.)   Later that day, the plaintiff reported to sick call for cuts

12

above the eye and in his mouth. A 1/8 inch cut on the right eyebrow was noted and cleaned with normal saline. (*Id.*) It was noted that the cut was already dry and a scab had begun to form. (*Id.*) A ½ inch cut to the plaintiff's inner lip was also noted and cleaned. (Defs.' Mem. Supp. Summ. J. Mot. Ex. 5 - Pl.'s Med. Records at 44.)   It was noted that this area was also already closing and scabbing. (*Id.*) *See* Taylor v. McDuffie, 155 F.3d 479, 484 (4th Cir.1998)(holding "temporary swelling and irritation is precisely the type of injury this Court considers de minimis."). The plaintiff speculates as to what injuries might have occurred, such as the development of an infection. Such speculation, however, falls short of actual serious or significant injury. Moseley v. King, 2006 WL 2827555 (D.S.C. 2006).

> Further, the PLRA provides:
>
> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir.1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering). Here, as discussed above, the plaintiff has not made such a showing of physical injury which is more than de miminis. Accordingly, this claim should be dismissed.

**b. Medical Indifference Claim**

The plaintiff alleges the defendants failed to provide him with medical treatment following the incident on August 18, 2004. (Am. Compl. ¶¶ 33, 49, 50.) The defendants contend that this claim should be dismissed. The undersigned agrees.

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id*. at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

"Deliberate indifference is a very high standard. In Miltier, the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." 896 F.2d at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, 429 U.S. 104; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" Coppage v. Mann, 906 F.Supp. 1025, 1037 (E.D.Va.1995) (*quoting* Monmouth Co. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987)).

In this case, the plaintiff has failed to show he had a serious medical need or that the defendants were deliberately indifferent to his needs. Importantly, other than the plaintiff's own conclusory allegations, he has not provided this Court with any competent evidence that he had a serious medical need and/or that the defendants were deliberately indifferent to his needs.

To the contrary, the undisputed medical summary of the plaintiff reflects that he was seen and treated on multiple occasions by medical personnel during his incarceration at ECI. (Defs' Mem. Supp. Summ. J. Mot. Ex. 7 - Pl.'s Med. Records 1-98.) More importantly to this claim, the plaintiff's medical record shows that he was treated the day after the incident alleged in the complaint and for minor cuts and bruises. (*Id*. at 44.) Furthermore, the plaintiff acknowledges he was treated the next day. (Pl.'s Mem. Opp. Summ. J. Mot. at 9.)

Therefore, at most, there was a delay in treating the plaintiff. "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188 (11th Cir.1994). As stated above, a medical need is serious if a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" Coppage v. Mann, 906 F.Supp. at 1037. The plaintiff has failed to allege how any such delay in his treatment resulted in a detrimental effect or has caused him a life-long handicap or permanent loss. The plaintiff speculates as to what injuries might have occurred, such as the development of an infection. Such speculation, however, falls short of supporting a claim of a serious injury. *See* Moseley v. King, 2006 WL 2827555 (D.S.C. 2006).

Further, the undersigned notes that none of the defendants are medical personnel. (*See* Am. Compl. at 2.) The Fourth Circuit has held that to bring a claim alleging the denial of medical

treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.* Under these principles, the plaintiff has not alleged facts stating any claim actionable under § 1983 regarding his medical treatment against the defendants who are non-medical personnel. Based on the foregoing, the plaintiff's medical indifference claim should be dismissed.

**c.  Civil Conspiracy**

The plaintiff alleges a conspiracy claim based upon his allegations that Lt. Graham watched him being assaulted without provocation (am. compl. ¶ 51), defendants Sgt. Rivers, Sgt. Jackson, and Lt. Jones assaulted him together (*id*. ¶ 54), defendant Chavis covered up the incidents (*id*. ¶ 57), and defendant Sellers denied him the right to call witnesses at his disciplinary hearing (id. ¶ 58). The defendants argue that the plaintiff has failed to set forth any evidence to establish a conspiracy claim. The undersigned agrees.

To establish a viable claim for civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). A plaintiff must come forward with specific evidence that each member of the alleged conspiracy shared the same conspiratorial objective. *Id.* To survive a summary judgment motion, the plaintiff's evidence must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan." *Id*.

The plaintiff's allegation must amount to more than "rank speculation and conjecture" and the plaintiff must show that the defendants possessed an intent to commit an unlawful objective. *Id.* Here, the plaintiff has not shown anything other than his own conclusory speculation that there was a conspiracy. There is no evidence in the record to support such a claim. Accordingly, the plaintiff's claim for civil conspiracy should be dismissed.

### d. Due Process Claim

The plaintiff has also raises a claim that he was denied his due process rights during his disciplinary hearing. (Am. Compl. ¶ 58.) The first question the undersigned must answer is whether the plaintiff's claims necessarily imply the invalidity of his current confinement pursuant to Heck v. Humphrey, 512 U.S. 477 (1994). Heck precludes a § 1983 claim in a prison disciplinary hearing which has not been previously invalidated, where the challenge would necessarily imply the invalidity of the deprivation of good-time credits. Edwards v. Balisok, 520 U.S. 641 (1997). The only evidence before the undersigned is that the plaintiff was sanctioned with the loss of twenty-six days of good time credit as a result of his disciplinary conviction, and since no evidence has been presented to show that this conviction or penalty has been reversed, declared invalid, or called into question by the issuance of a writ of habeas corpus, this claim is barred by Heck. Accordingly, the plaintiff's due process rights claim regarding his disciplinary proceeding should be dismissed.

### e. State Law Claims

To the extent that the plaintiff states additional claims under state law for assault and battery or negligence, the court should decline to exercise supplemental jurisdiction over these claims as it is recommended that summary judgment be granted on the plaintiff's federal claims as set for above. *See* 28 U.S.C. § 1367(c).

## III.  CONCLUSION

Based on the foregoing, it is recommended that the defendants' motion for summary judgment (document # 21) be GRANTED and the plaintiff's complaint be dismissed.

Further, if the District Court adopt this report, it is recommended that the plaintiff's motion for a temporary restraining order (document # 26) be DENIED as moot.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

April 3, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**